UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMY HILL,

    Plaintiff,

v.                                           CASE No. 8:08-CV-1322-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

---

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[*] The plaintiff initially based her claims upon physical impairments. In this court, she relies solely upon mental impairments. Because there is no medical evidence of a mental impairment on, or before, March 31, 2005, when the plaintiff last met the earnings requirement for disability insurance benefits, the decision of the Commissioner of Social Security will be affirmed as to the claim for such benefits. However, because

---

    [*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

the finding that the plaintiff did not subsequently develop a severe mental impairment is not supported by substantial evidence, the decision regarding the claim for supplemental security income payments will be reversed and remanded for further proceedings.

I.

The plaintiff, who was forty years old at the time of the administrative hearing and who has an eleventh grade education (Tr. 69, 436), has worked at various jobs, including newspaper inserter, night stocker, and convention services (Tr. 64). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to an injury to her left ankle, foot, and leg (Tr. 63). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "chronic back pain and left foot and ankle pain" (Tr. 16). The law judge determined that, despite these impairments, the plaintiff could perform types of sedentary work where occasional lapses in concentration are accepted (Tr. 17). He concluded further that the work

should be done primarily in a seated position doing routine tasks with occasional bending, stooping, crouching, and kneeling (id.). The law judge found that these limitations prevented the plaintiff from performing past work (Tr. 20). However, based upon the testimony of a vocational expert, the law judge determined that the plaintiff could perform other work that exists in significant numbers in the national economy, such as final assembler, product inspector, and stone setter (Tr. 21). The law judge therefore decided that the plaintiff was not disabled (Tr. 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on March 31, 2005, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff predicated her claims for benefits upon physical impairments. However, the day before the administrative hearing, the plaintiff raised an allegation of mental impairments (Tr. 16). In her

memorandum in this court, the plaintiff relies solely upon evidence regarding mental impairments (see Doc. 17, pp. 15-19).

Under these circumstances, the law judge's denial of the claim for disability benefits is due to be affirmed. The plaintiff's insured status for disability benefits expired on March 31, 2005. At that point, the plaintiff was not alleging any mental impairment and was not seeing any mental health care provider for such an impairment. The earliest date of a visit concerning a mental impairment was July 25, 2006, when the plaintiff was sent by her primary care physician to a licensed mental health care counselor (Tr. 395-404). Significantly, the preceding week her treating neurologist reported that the plaintiff "denies any auditory hallucinations, visual hallucinations, overwhelming compulsions, depression, anxiety or suicidal/homicidal thoughts" (Tr. 354).

In sum, the plaintiff has not challenged the law judge's decision with respect to her physical impairments. Moreover, there is no evidence that the plaintiff was suffering from a mental impairment as of March 31, 2005, when her insured status expired. Consequently, the Commissioner's decision regarding the claim for disability benefits is affirmed.

With respect to the claim for supplemental security income payments, which does not have an earnings requirement, the plaintiff's primary challenge is that the law judge erred in discounting the opinion of psychiatrist Dr. Hany H. Botros (Doc. 17, p. 15). The law judge, however, reasonably discounted that opinion.

The plaintiff went to see Dr. Botros, a psychiatrist, six times from December 2006 through July 2007. Dr. Botros diagnosed the plaintiff with "major depressive disorder, severe with psychotic features by history" (Tr. 387). At her latest visit on July 11, 2007, Dr. Botros reported (Tr. 383):

> The patient mentions that she is doing well on her medication, feels medication works for her with no side effects reported. She reports good mood and good sleep at night. Denies auditory or visual hallucination. Denies suicidal or homicidal thoughts.

On the same day, however, the psychiatrist filled out a residual functional capacity questionnaire given to him by the plaintiff in which he opined that her mental impairments essentially prevented her from functioning in society (Tr. 377-80).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge appropriately evaluated the opinion from Dr. Botros, giving his opinion no weight. Thus, the law judge stated (Tr. 16-17):

> The claimant did not allege any mental problems when she filed for benefits. The file contains records from as far back as 1991 when the claimant is treated for such diverse problems as gonorrhea to various joint pains. However, at no time, does any doctor ever voice any concern for the claimant's mental health. She is never referred to a mental health expert and never receives any mental health treatment. Yet, on the day before the hearing, a Residual Functional Capacity (RFC) is submitted regarding alleged emotional problems (Exhibit 20F). Dr. Bostros [sic] places the claimant at an "extreme" category for mental health reasons. However, I informed counsel that this exhibit would not be given any weight because there are no mental health records at all in the file from that doctor.... Exhibit 21F was presented after the

> hearing and indicates that the claimant sought mental health treatment in September 2006. She maintained she was getting depressed as a residual of her chronic back pain.... Of some interest, in January 2007 Dr. Botros said she is depressed with psychotic features by history and there is absolutely no history of mental health treatment other than interviews by Dr. [Nirmala] Apte. By July 2007 the claimant reports "that she is doing well on her medication, feels medication works for her with no side effects reported. She reports good mood and good sleep at night. She denies auditory or visual hallucination."

That reasoning thus establishes that Dr. Botros's extravagant opinion is not only conclusory but also inconsistent with his own reports. Both of these are appropriate reasons for discounting the opinion. Lewis v. Callahan, supra, 125 F.3d at 1440.

While the plaintiff's challenge relied primarily upon the opinion of Dr. Botros, she also made the following argument (Doc. 17, p. 17):

> [T]he ALJ reviewed Dr. Botros' assessment and disregarded it;[sic] stating that he gave no weight to Dr. Botros' findings and determined that not only Plaintiff did not suffer from a disabling mental impairment, but that Plaintiff's mental allegations were "non-severe." (Tr. 16). This is error. Three other mental health professionals offered opinions as to Plaintiff's mental capacity and limitations.

> They include another psychiatrist, a psychologist,
> and a mental health counselor.

This contention has merit to the extent that it argues that the law judge erred in finding that the plaintiff did not have a severe mental impairment.

The term "severe impairment," as used in the regulations is something of a misnomer. The regulations could more aptly use the term "significant impairment." Thus, the regulations define a nonsevere impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 416.921(a). Accordingly, the court of appeals has stated that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

The plaintiff argues that, "[f]rom July 25, 2006 through October 2, 2007, two psychiatrists, a psychologist, and a licensed mental health counselor evaluated and/or treated Plaintiff. Uniformly, their records show that Plaintiff's mental problems were not just severe, but disabling and

consistent with her testimony at the hearing" (Doc. 17, p. 19). The law judge has set forth reasons justifying the conclusion that the records of these mental health providers do not compel a finding that the plaintiff had an incapacitating mental impairment. Those reasons, however, do not support a finding that the plaintiff did not even have a severe mental impairment under the generous definition of that term.

On this point, the plaintiff first relies on the opinion of Lael Louty, a licensed medical health counselor who, after seeing the plaintiff for the first time on July 25, 2006, diagnosed her with "major depression severe w/ psychotic features" and assigned her a Global Assessment of Functioning ("GAF") score of 45 (Tr. 404). While Louty is not considered an acceptable medical source under the regulations, see 20 C.F.R. 416.913(a), her information could provide some evidence of a mental impairment. 20 C.F.R. 416.913(d)(1).

As indicated, Louty assigned the plaintiff at that time a GAF of 45. The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text

Revision), p. 34. A rating of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (id.). However, a single GAF score does not provide solid evidence of a severe mental impairment. See DeBoard v. Commissioner of Social Security, 2006 WL 3690637, *3, *4 (6th Cir. 2006)(unpub. dec.). The Commissioner has declined to endorse the use of GAF scores in disability determinations. Wind v. Barnhart, 2005 WL 1317040, *6 n. 5 (11th Cir. 2005)(unpub. dec.). While GAF scores are of questionable value, a low score of 45 would seemingly provide some evidence in making the gross determination of whether the plaintiff had a severe impairment.

The plaintiff also refers to psychiatrist Dr. Nirmala Apte, who saw the plaintiff two times and diagnosed her with "major depression, first episode with psychotic features" and a GAF of 45 (Tr. 394). Dr. Apte reported (Tr. 389):

> She had difficulty sitting still throughout the interview. She appeared to be anxious, irritable, nervous and depressed, not suicidal. She is not

> overtly psychotic, but she reports experiencing
> auditory hallucinations.

The law judge's consideration of Dr. Apte's opinion was limited to the following (Tr. 16):

> During the initial evaluation with Nirmala Apte, M.D., from the same firm as Dr. Bostros [sic], she moaned and groaned with the alleged pain. She was then diagnosed with depression and assigned a GAF of 45. Claimant then missed the next two appointments. At the fourth appointment she appeared and complained of pain in her back anew.

Thus, the law judge's discounting of Dr. Apte's opinion appears to be based upon missing two appointments. This circumstance is, at best, a questionable basis for discounting Dr. Apte's assessments.

It is noteworthy that Dr. Apte reported that the plaintiff was irritable (Tr. 389). This is consistent with Dr. Botros's statement that the plaintiff's mental disorder renders her unable "to deal with others on [a] routine basis" (Tr. 379). Similarly, Louty reported that the plaintiff is "very isolated, can't go to social functions, easily angered at her children, stays in her room" (Tr. 395).

After the hearing, the Social Security Administration sent the plaintiff to Dr. Michael F. Sunich, a consultative psychologist, for an evaluation. Dr. Sunich conducted an examination of the plaintiff on October 2, 2007, and diagnosed the plaintiff with bipolar disorder severe with psychotic features and depression by history, and assigned her a GAF of 46 (Tr. 408). He indicated further on a Medical Source Statement that the plaintiff had several moderate and marked restrictions in her ability to do work-related activities (Tr. 409-11). The law judge gave no weight to this psychologist's opinion, explaining (Tr. 17):

> Claimant then sees Michael Sunich, a Psychologist ... and maintains she is depressed primarily because of physical pains that doctors cannot confirm on objective examinations (Exhibit 22F). I, therefore, do not give the assessment by Dr. Sunich any weight at all and conclude that any limited treatment she may have required was successful by July 2007. (However and as noted below, the claimant's complaints of ankle and leg pain evaporated in January 2005 when all treating physicians uniformly indicated she had no permanent physical limitations.) ... Dr. Sunich administered no objective examinations and diagnosed bipolar with a GAF of 46. No weight is given to the reports of Dr. Botros and Dr. Sunich.

These are not particularly compelling reasons for rejecting the assessment of the psychological examiner selected by the Social Security Administration. Thus, there is no indication that Dr. Sunich based his opinion upon the plaintiff's complaints about her physical problems. The law judge overstates the significance of Dr. Botros's statement that the plaintiff is getting better on her medication, since Dr. Sunich subsequently concluded that the plaintiff had significant mental problems. Further, there were no objective examinations only in the sense that written psychological tests were not administered; Dr. Sunich did employ a mental status examination (Tr. 406), which included tests of the plaintiff's memory (and upon which the plaintiff did poorly) (Tr. 408).

Consistent with the reports of the other three mental health care providers, Dr. Sunich reported that the plaintiff snaps at others and that, as a result, she isolates herself (Tr. 406-07). Dr. Sunich concluded that the plaintiff had marked limitations interacting with the public, with supervisors, and with co-workers (Tr. 410).

In sum, four mental health care providers have indicated, at a minimum, that the plaintiff has significant limitations in the area of social

functioning. Since these are the only four providers that have assessed the plaintiff's mental status, there is no evidence to the contrary. Consequently, the law judge's finding that the plaintiff had only a "non-severe mental impairment" is not supported by substantial evidence. Rather, the evidence compels the conclusion that the plaintiff's mental impairment was severe as that term is used in the Social Security regulations.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED as to the claim for disability insurance benefits. It is hereby REVERSED as to the claim for supplemental security income, and that matter is REMANDED for further proceedings. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 3rd day of July, 2009.

/s/ Thomas B. Wilson
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE